IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DANIELA ARROYO GONZÁLEZ, et al.

Plaintiffs

v.

RICARDO ROSSELLÓ NEVARES, et al.

Defendants

CIVIL NO. 17-1457 (CCC)

MOTION TO DISMISS PURSUANT TO
FEDERAL CIVIL PROCEDURE RULE 12(b)(6)

TO THE HONORABLE COURT:

**COME NOW**, defendants Hon. Ricardo Rosselló Nevares, Hon. Rafael Rodríguez Mercado and Wanda Llovet Díaz, in their official capacities, without submitting to this Honorable Court's Jurisdiction, and through the undersigned attorney, respectfully alleges and prays as follows:

I.      Introduction

On April 11, 2017, Plaintiffs filed the instant amended complaint challenging the Puerto Rico's Birth Certificate policy and practice.[1] Plaintiffs allege that the prohibition to transgender persons born in Puerto Rico from correcting the gender marker on their birth certificate violate its Fourteenth Amendment's right to privacy and equal protection, and its First Amendment right to freedom of speech. Plaintiff requests the Honorable Court to: (1) Enter a declaratory judgment that the actions of Defendants complained of herein, including the enforcement of Puerto Rico's Birth Certificate Policy, are in violation of the Equal Protection Clause of the Fourteenth

---

[1] See Amended Complaint [Dkt. No. 15] ¶¶70-75, at pages 16-17.

Amendment of the United States Constitution; the Due Process Clause of the Fourteenth Amendment of the United States Constitution; and the Free Speech Clause of the First Amendment to the United States Constitution; (2) Permanently enjoin Defendants, their agents, employees, representatives, and successors, and any other person acting directly or indirectly in concert with them, from enforcing Puerto Rico's Birth Certificate Policy, including from refusing to provide birth certificates to transgender persons that accurately reflect their sex, consistent with their gender identity; (3) Order Defendants, their agents, employees, representatives, and successors, and any other person acting directly or indirectly in concert with them, to permit transgender persons born in Puerto Rico to correct their birth certificates to accurately reflect their true sex, consistent with their gender identity, in accordance with the practice delineated in 24 L.P.R.A. § 1136, and without adhering to the practice delineated in 24 L.P.R.A. § 1231 of using a strike-out line to change one's name, or otherwise including any information that would disclose a person's transgender status on the face of the birth certificate; (4) Order Defendants to immediately issue corrected birth certificates to Plaintiffs Daniella Arroyo González, Victoria Rodríguez Roldán, and J.G. accurately reflecting their true sex, consistent with their gender identity, in accordance with the practice delineated in 24 L.P.R.A. § 1136, and without adhering to the practice delineated in 24 L.P.R.A. § 1231 of using a strike-out line to change one's name, or otherwise including any information that would disclose a person's transgender status on the face of the birth certificate; (5) Award Plaintiffs the costs and disbursements of this action, including reasonable attorney's fees; and (6) Grant such other and further relief in favor of Plaintiffs as this Court deems just, equitable and proper.

For the reasons discussed below, the instant complaint should be Dismissed with Prejudice.

## II.    Standard of Review

Under the Federal Rules of Civil Procedure a defendant may, in response to an instant pleading, submit a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). The Court must accept as true any well-pleaded allegations in the complaint and draw all reasonable inferences therefrom in plaintiff's favor. Correa Martínez v. Arrillaga Beléndez, 903 F. 2d 49, 51 (1st Cir. 1990). However, the Court need not accept conclusory allegations as truthful. Holden v. Hagopian, 978 F.2d 1115 (9th Cir. 1992).

The primary purpose of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is to challenge the legal theory, not the sufficiency of any evidence that might be adduced. Advanced Cardiovascular v. Scimed Life, 988 F.2d 1157 (1993). To survive a motion to dismiss, a complaint must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. See Berner v. Delahanty, 129 F. 3d 20 (1st Cir. 1997); Gooley v. Mobil Oil Corp., 851 F. 2d 513 (1st Cir. 1998). As stated before by this Honorable Court, in Escabi v. Puerto Rico, Civ. No. 02-1627(PG), "Plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law. Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts will

not defeat a motion to dismiss" (quoting <u>Washington Legal Foundation v. Massachusetts Bar</u> <u>Foundation</u>, 993 F.2d 962, 971 (1st Cir. 1993) and <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 444 (1st Cir. 1992)).

While the Court must comply with the standard of making all inferences in favor of Plaintiffs, it is not obligated to "swallow the plaintiff's invective hook, line and sinker, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996); <u>Doyle v. Hasbro, Inc.</u>, 103 F. 3d 186 (1st Cir. 1996); <u>Mass. School of Law at Andover v. American Bar</u>, 142 F. 3d 26 (1st Cir. 1998). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all well-pleaded allegations in the complaint are true, even if doubtful in fact. <u>Bell</u> <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007). "In general, it is improper for a court to consider hearsay statements when ruling on a motion to dismiss." <u>Beydoun v. Wataniya</u> <u>Rests. Holding, Q.S.C.</u>, 768 F.3d 499 (6th Cir. 2014).

Dismissal for failure to state a claim is warranted if it clearly appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957).

Thus, Plaintiffs must, and are required to, present allegations that nudge their claims across the line from conceivable to plausible in order to comply with the requirements of Rule 8(a). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

On the other hand, it is well established that an affirmative defense may properly be raised in a motion to dismiss. <u>Blackstone Realty, LLC v. F.D.I.C.</u>, 244 F. 3d 193 (1st Cir. 2001).

### III.  The Department of Health of Puerto Rico's practice and policy is Constitutional.

At the outset, it must be underscored that Plaintiff is not challenging the constitutionality of a Puerto Rico law, but a policy and practice.  Nonetheless, in an abundance of caution, Defendants will address Plaintiff's claims.

"A statute is presumed constitutional, [citation omitted] and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." Heller v. Doe, 509 U.S. 312, 320-21, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (internal quotations and citations omitted). A facial challenge to a legislative act, moreover, is considered "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). To prevail on a facial challenge,[2] plaintiffs must therefore establish that "no set of circumstances exist under which the Act would be valid." McGuire v. Reilly, 386 F.3d 45, 57 (1st Cir. 2004)(quoting Salerno, 481 U.S. 739 (1987). "[T]his standard imposes a very heavy burden on a party who mounts a facial challenge to a state statute." McCullen v. Coakley, 571 F.3d 167, 174 (1st Cir. 2009); see also Williams v. Puerto Rico, 910 F. Supp. 2d 386, 392-93 (D.P.R. 2012).

Plaintiffs in this case challenge the constitutionality of the DOH's Birth Certificate Amendment policy and practice. Defendants' actions, however, are not based on a "policy and

---

[2] The Supreme Court has explained that facial challenges are inherently disfavored because they "rest on speculation," "raise the risk of premature interpretation of statutes on the basis of factually barebones records," "run contrary to the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Hightower, 693 F.3d at 76-77 (citing Sabri v. United States, 541 U.S. 600, 609, 124 S. Ct. 1941, 158 L. Ed. 2d 891 (2004); Ashwander v. TVA, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936); Ayotte v. Planned Parenthood of Northern New Eng., 546 U.S. 320, 329, 126 S. Ct. 961, 163 L. Ed. 2d 812 (2006)).

practice", but on Vital Statistics Registry Act of Puerto Rico, Act 24 of April 22[nd], 1931 (hereinafter,

"Vital Statistics Registry Act" or "Act 24"), as amended, in relevant part, by Act 204 of July 23rd,

1974, 24 L.P.R.A. §1231. As previously noted, Plaintiffs do not challenge the constitutionality of

said Act, be it facial or as applied. Therefore, plaintiffs' facial constitutional challenge does not

state a claim upon which relief may be granted. See Williams v. Puerto Rico, 910 F. Supp. 2d 386,

393 (D.P.R. 2012).

 The Vital Statistics Registry Act, as amended, provides:

> The Secretary of Health shall prepare, cause to be printed, and furnish to the keepers of the Registers, all books, printed matter and forms to be used for the registration of births, marriages and deaths occurring or taking place in the Commonwealth of Puerto Rico, or which may be necessary to carry out the purposes of this part, and he shall prepare and distribute such detailed instruction, not in conflict with the provisions of this part, as may be necessary for the uniform application hereof and for **keeping a perfect registration system**; and for such purpose, no books, printed matter, or forms, other than those furnished by the Secretary of Health shall be used. Said Secretary shall cause the careful examination of the certificates received in his Department each month from the keepers of the Registers, and he shall request such additional information as may be necessary on those certificates appearing incomplete or defective, for which purpose, every person having knowledge of facts in connection with any birth, marriage, or death, shall be under the obligation to furnish said information when so required by the Secretary of Health in person or through his accredited representative, by mail, or through the district registrar; Provided, That **omissions or defects appearing on any certificate before being registered** in the Department of Health may be corrected by inserting in red ink the necessary corrections or additions in said certificate, but **after the same has been filed in the Department of Health, no correction, addition, or amendment substantially altering it, shall be made thereon** unless by virtue of an order of the District Court, which order, in such case, shall be filed in the Department of Health, reference to be made to the certificate to which it corresponds; Provided, however, That when the recognition of a natural child is made in a public document or in an affidavit, the presentation of said document or affidavit will be sufficient for the keeper of the Register of Vital Statistics to proceed to register the same, and, for that

purpose, the corresponding certificate of registration shall be filled out; Provided, further, That in case the birth of such child has been previously registered, the additional information resulting from such recognition shall be entered on the certificate.

To obtain said order the interested party shall file, in the Part of the District Court of his domicile, a petition setting forth under oath and duly substantiating his pretension accompanied by the proper documentary proof in support of his petition. Copy of the petition and of any other documentary proof shall be transmitted simultaneously with his filing to the Prosecuting Attorney who shall take his standing within the term of ten (10) days.

After ten (10) days from the date of transmittal and notice to the Prosecuting Attorney, without his having made any objection, the court shall take cognizance and shall resolve the petition on its merits without a hearing or shall hold it in its discretion, if deemed advisable, and shall issue the proper writ.

The writ authorizing the rectification or amendment of an entry in the late Civil Registry shall be recorded by annotation made in due form on the margin of the rectified registration. The rectification addition or amendment of a certificate already filed in the General Registry of Vital Statistics shall be made by inserting therein the corrections, additions or amendments authorized by the court. The necessary scratches shall be made in such manner that the scratched word is always legible.

The change, addition or modification of a name or surname may be made only at the instance of an interested party, who shall file in any Part of the District Court, the proper petition, setting forth under oath the grounds for his pretension, accompanied by the proper documentary proof in support of his petition. Copy of the petition and of any other documentary proof shall be transmitted to the Prosecuting Attorney simultaneously with the filing.

After ten (10) days from the date of transmittal and notice to the Prosecuting Attorney without his having made any objection, the court shall take cognizance and resolve the petition on its merits without a hearing or shall hold it in its discretion if deemed advisable, and shall issue the proper writ. The writ authorizing the change, addition or modification of a name or surname, shall be recorded in the late Civil Registry by annotation made in due form on the margin of the registration of the birth of the interested party and on the margin of his marriage certificate. The change, addition or modification of a name or surname, shall be made in the General Registry of Vital Statistics by crossing out in the birth certificate and in the marriage certificate of the interested party the original name or surname substituted, and signing the new

name or surname authorized by the court. The scratches shall be made so that the name or surname eliminated is always legible." **[Emphasis added].**

24 L.P.R.A. §1231.

The Vital Statistics Registry Act creates a General Demographic Registry within the Department of Health. The purpose of the alluded Act 24 is to register, collect, guard, preserve, amend and certify vital facts of people born in Puerto Rico. 24 L.P.R.A. §1042(1). After 1931, the Demographic Registry became a formal and credible statistical registry that allows the study of vital statistics of our population.[4] It is the instrument that contains the official version of the existence, civil status and vital facts of the people born in Puerto Rico. The information that is contained in the Registry constitutes *prima facie* evidence of the fact to be proven. Ex Parte Delgado-Hernández, 165 D.P.R. 170, 187 (2005); Medina v. Pons, 81 D.P.R. 1, 8 n. 11 (1959); Bigas Surs. V. Comisión Industrial, 71 D.P.R. 336 (1950); Pueblo v. Ramírez, 65 D.P.R. 680 (1946); Mercado v. American Railroad Co., 61 D.P.R. 228 (1943).

In Ex Parte Delgado-Hernández, supra, the Puerto Rico Supreme Court interpreted the provisions of the Vital Statistics Registry Act of Puerto Rico in a controversy similar to the one in the instant complaint. The difference between both plaintiffs is that in Ex Parte Delgado, the plaintiff had changed its sex through surgery, becoming physically a member of the opposite sex (female), which the plaintiff in this case had admittedly not done. In Ex Parte Delgado-Hernández, supra, the Supreme Court expressed:

The birth certificate is a document that reflects the vital data of the person at the moment of its birth. **It is, therefore, a historical X-ray of the person at birth, which**

---

[4] See Statement of Motives, Act Num. 220 of August 9, 1998.

records the following information: date and place of birth, name of the parents, name and sex of the registered person. [Emphasis in original].

...

165 D.P.R. at 187.  The Supreme Court of Puerto Rico in Ex Parte Delgado-Hernández, supra, further conveyed:

> The Demographic Registry Act provides the procedure to amend the birth certificate, also as a manner of exception. The Act provides: The omissions or inaccuracies that appear on any certificate prior to being registered at the Department of Health can be corrected inserting the necessary corrections or additions in red ink on the certificate, **but after being filed at the Department of Health, no rectification, addition or amendment can be made that substantially alters the same, but only by virtue of a Court Order, which shall be filed at the Department of Health making reference to the corresponding certificate.** [Emphasis in original].
>
> ...
>
> As noted by the Puerto Rico Supreme Court, the Demographic Registry Act is complemented by section 1071-19 of the Regulation of the Demographic Registry, which provides:

> *Corrections or alterations after the inscription is made-* After the certificate has been accepted by the Registrar, it cannot be the object of any change, erasure or alteration, nor can the transcription made in the record book can be changed, without due process of law. The material errors that appear on any certificate presented for inscription or after being inscribed, consisting of a mistake in the name, last name, word or non-essential phrase, can be corrected writing them correctly with red ink, or inserting the omitted word or words. Necessary crossed out words will be made in a fashion that the crossed out word can be read. In order to make such corrections, the registrar will request the necessary proof, in a timely manner. **[Italics in original].**

Id. at 188.

Pursuant to the Vital Statistics Registry Act of Puerto Rico, as the Supreme Court expressed, there are only two processes for the correction of mistakes: one before the certificate is registered, and the other after the certificate has been registered at the Department of Health.

In the first case, the Registrar can correct the "omissions or mistakes" in the inscription before the registration takes place, inserting the corrections in red ink. After the certificate has been registered, the Act prohibits that any change, correction or amendment that substantially alters the certificate, unless it is through a Court Order to that effect. The Supreme Court interprets the Vital Statistics Registry Act of Puerto Rico restrictively, concluding that any changes requested mush have been previously authorized by law. Ex parte Delgado Hernández, 165 D.P.R 170, 189 (2005); Ex Parte León Rosario, 109 D.P.R. 804 (1980); Ex parte Pérez Pérez, 65 D.P.R. 938 (1946).

The Vital Statistics Registry Act establishes, in a *numerus clausus* mode, the only times in which changes can be made to the vital data annotations in the birth certificate. Therefore, there is no margin for a liberal interpretation of its provisions.

The Vital Statistics Registry Act does not contemplate or authorize the change requested by the plaintiff. To the contrary, it expressly prohibits making changes in the original records of the birth certificate. The changes requested by the plaintiff affect the civil status of the person, the crux of the Demographic Registry. Therefore, we are before a substantial change, whose modification it is only for the Legislative branch.

It should be noted that in at least twenty-eight (28) states of the United States of America, have legislated to allow the amendment of birth certificates to reflect changes such as sex changes through sex reassignment surgery. See, e.g., Hill v. Commonwealth Registrar of Birth Records, 2016 U.S. Dist. LEXIS 83151, *2 (D. Mass. June 23, 2016).  In Hill, the court noted that Massachusetts law, unlike in the Puerto Rico law, expressly provides that the birth record may be changed after "a person has completed medical intervention for the purpose of permanent sex

reassignment", allowing for "a petition for a name change [to] be heard by the probate court in the county in which the petitioner resides.". Id. (internal citation omitted).

In some other states, the established procedure only requires a petition to the court for the change of the sex marker in the birth certificate; or, that a new certificate is issued.[5] Other states, nonetheless, require a sworn statement by a physician or surgeon that performed the surgery, in order for the Court to order the change in the birth certificate.[6] Other states, like Idaho, Kansas, Ohio, and Tennessee will not issue a birth certificate with a change in the sex marker. Moreover, Tennessee has an Act which explicitly prohibits the change in the sex marker in the certificate of birth.[7]

Being that the Vital Statistics Registry Act of Puerto Rico explicitly provides the specific instances in which changes to the birth certificate can be made, which do not include substantial changes like the one requested by plaintiff, the requested remedy should be denied.  This is buttress by the fact that Plaintiffs have not even endured a sex-change surgery.  Moreover, the Supreme Court of Puerto Rico in a case in which a similar request was made, while interpreting the Vital Statistics Registry Act of Puerto Rico, stated that any substantial changes to the birth certificate must be previously authorized by the Legislative Act through legislation.  In the present

---

[5] Ex parte Delgado Hernández, supra, at page 193 n. 16. E.g., Ala. Code. sec. 22-9A-19(d),Ark. Code. Ann. sec. 20-18-307(d)(4),California Health and Safety Code sec. 103425,Colo. Rev. Stat. Ann. sec. 25-2-115(4),Conn. Gen. Stat. Ann. sec. 19a-42,D.C. Code Ann. sec. 7-217(d),Ga. Code Ann. sec. 31-10-23(e),Md. Code Ann. Health-Gen.I sec. 4-214 (b)(5),Miss. Code Ann. sec. 41-57-21, Mo. Stat. sec. 193.215,Mont. Code. Ann. sec. 50-15-204, Nv. Adm. Code sec. 440.130,Or. Rev. Stat. sec. 432-235,Utah Code Ann. sec. 26-2-11,Va. Code Ann. sec. 32.1-269,Wisc. Stat. sec. 69.15 (1)(a).

[6] Ex parte Delgado Hernández, supra, at page 193 n. 16. E.g.,Ariz. Rev. Stat. sec. 36-337 (a)(4),Haw. Rev. Stat. sec. 338-17.7 (4)(b),410 Ill. Comp. Stat. Ann.sec. 535/7 (d), Iowa Code IV sec. 144.38,Ky. Rev. Stat. Ann. sec. 213.121 (5),La. Rev. Stat Ann. 40:62,Mass. Gen. Laws Ann. Ch. 46 sec. 13 (e),Mich. Comp. Laws sec. 333.2891 (9)(a),N.J. Stat. Ann. 26:8-40.12,Neb. Rev. Stat. sec. 71-904.01,N. M. Stat. Ann. sec. 24-14-25 (D),N.C. Gen. Stat. sec. 130A-118.

[7] Ex parte Delgado Hernández, supra, at 193 n. 16.

case, the legislature, through the enactment of the Vital Statistics Registry Act, prohibited any change in the birth certificate that is not authorized in the Act. Therefore, the change in the sex marker in the birth certificate cannot be allowed by the "policies and practices" of the Department of Health that the plaintiff challenges as unconstitutional. Therefore, the instant complaint should be DISMISSED WITH PREJUDICE.

## IV.  FOURTEENTH AMENDMENT CLAIMS

### Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "contemplates that similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). "To establish a claim for an equal protection violation by reason of 'selective enforcement' of law or regulation against the plaintiff, the plaintiff must show that '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Febus-Cruz v. Sauri-Santiago, 652 F. Supp. 2d 140, 153 (D.P.R. 2009); see Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995).

Equal Protection Clause claims are reviewed under a rational basis standard when the state action does not burden a suspect class. See Heller v. Doe by Doe, 509 U.S. 312, 319, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). Under a rational basis review, plaintiff must show that there is no rational relationship between the disparity of treatment and any legitimate government

purpose. See Id. at 320. A necessary element in an equal protection claim is proof of intent to discriminate. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977); Rivera v. Puerto Rico Aqueduct & Sewers Auth., 331 F.3d 183, 192 (1st Cir. 2003); Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997).

In this case, the plaintiff fails to establish an Equal Protection claim since the second requirement has not been met. The previous discussion regarding the constitutionality of the Vital Statistics Registry Act clearly reveals that the specific instances in which changes to the birth certificate can be made, which do not include substantial changes like the one plaintiffs request. 24 L.P.R.A. §1231. Moreover, the Supreme Court of Puerto Rico, in a case in which a similar request was made and while interpreting the Vital Statistics Registry Act of Puerto Rico, stated that any substantial changes to the birth certificate must be previously authorized by the Legislative Act through legislation. And, the Puerto Rico legislature prohibited any change in the birth certificate that is not authorized in the Act. Therefore, the change in the sex marker in the birth certificate cannot be allowed by the "policies and practices" of the Department of Health that the plaintiff challenges as being unconstitutional. This prohibition of substantial changes in birth certificates applies to ALL persons born in Puerto Rico, whose birth certificates have already been registered at the Department of Health.  Plaintiff has failed to allege facts showing that others similarly situated were allowed to make substantial changes to their birth certificates, like the change requested here and denied.

Neither Department of Health nor the applicable laws provide for a selective treatment when persons born in Puerto Rico request a substantial change to a registered birth certificate, all

such requests are denied, inasmuch as the Vital Statistics Registry Act does not allow such changes. Therefore, Plaintiff also fails to establish defendants' alleged intent to discriminate in violation of the Equal Protection of the Law, since any request to make substantial changes to birth certificates, regardless of the person making the request, is denied as prohibited by the Act.

Therefore, it is respectfully requested that Plaintiff's Equal Protection claim be DISMISSED WITH PREJUDICE.

## V.   PRIVACY RIGHT UNDER FIRST AND FOURTEENTH AMENDMENTS

Plaintiffs claim an alleged violation of privacy rights by alleging that "By forcing transgender persons to identify themselves through their birth certificate with a sex that was incorrectly assigned to them at birth, Puerto Rico's Birth Certificate Policy violates the First Amendment by compelling transgender individuals, like the Plaintiffs and the transgender members of Puerto Rico Para Tod@s, to identify with a sex and identity inconsistent with who they are."[9]  They also claim that "Similarly, by forcing transgender people through their birth certificate private, sensitive, and personal information about their transgender status, gender identity, or medical condition, Puerto Rico' Birth Certificate Policy violates the First Amendment by compelling transgender persons, like the individual Plaintiffs and the transgender members of Puerto Rico Para Tod@s, to disclose private, sensitive, and personal information that they may not want to be publicly known or that may expose them to an invasion of privacy, prejudice,

---

[9] See Amended Complaint ¶ 192 at 38.

discrimination, harassment, distress, humiliation, and violence."[10] However, Plaintiff failed to set forth a colorable First and substantive due process Fourteenth Amendments claims.

The Supreme Court has held that the Fourteenth Amendment encompasses a privacy right that protects against significant government intrusions into certain personal decisions. See Roe v. Wade, 410 U.S. 113, 152, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973). This right of privacy "has some extension to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education." Id. (citations omitted). Nevertheless, the Supreme Court has explained that only those rights that "can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of personal privacy." Id. (quoting Palko v. Connecticut, 302 U.S. 319, 325, 82 L. Ed. 288, 58 S. Ct. 149 (1937)).

The Supreme Court has long recognized that the *Due Process Clause* "bar[s] certain government actions regardless of the fairness of the procedures used to implement them . . . ." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L. Ed. 2d 662 (1986). This "substantive component" of the Due Process Clause "includes not only privileges and rights expressly enumerated by the *Bill of Rights*, but [also] the fundamental rights 'implicit in the concept of ordered liberty.'" Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L. Ed. 2d 147 (1973) (quotations omitted). Two types of interests have been identified as protected "by the right to privacy that is rooted in [] substantive due process"- the interest in "independence in making certain kinds of important decisions," and the "interest in avoiding disclosure of personal matters."

---

[10] Id., at ¶193, pages 38-39.

Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct 869, 51 L. Ed. 2d 64 (1977); Nixon v. Administrator of General Services, 433 U.S. 425, 465, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977).

Plaintiff's claim implicates the latter interest, which the Sixth Circuit has described as the right to "informational privacy." Id. (quoting Bloch v. Ribar, 156 F. 3d 673, 683 (6th Cir. 1998). A plaintiff alleging a violation of its right to informational privacy must demonstrate that the interest at stake relates to a "fundamental liberty interest." Id. "Only after a fundamental right is identified should the court proceed to the next step of the analysis- the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." Id.

A federal constitutional right to "informational privacy" does not exist. The Due Process Clause does not "guarante[e] certain (unspecified) liberties"; rather, it "merely guarantees certain procedures as a prerequisite to deprivation of liberty." NASA v. Nelson, 562 U.S. 134, 160, 131 S. Ct. 746, 178 L. Ed. 2d 667 (2011)(Scalia, J., Thomas, J. Concurring)(quoting Albright v. Oliver, 510 U.S. 266, 275, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (Scalia, J., concurring)). The Supreme Court has not decided whether the Fourteenth Amendment includes a right against public disclosure of private medical information, see Nat'l Aeronautics & Space Admin. V. Nelson, 131 S.Ct. 746, 756-57, 178 L. ED. 2d 667 (2011), and the question remains open in the First Circuit. Nunes v. UMass Corr. Health, 2013 U.S. Dist. LEXIS 143292, at *7 (D.Mass. Oct. 3, 2013)(citing Coughlin v. Town of Arlington, No. 10-10203-MLW, 2011 U.S. Dist. LEXIS 146285, at *42, 2011 WL 6370932, at *13 (D.Mass. Dec. 19, 2011)). The First Circuit in Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 144, (1st

Cir. 2014), relied on <u>Nasa v. Nelson</u>, and did not decide whether plaintiffs had a constitutional right to keep medical information private.

The Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." <u>Id</u>. at 161 (quoting <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720-721, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997)). Our due process precedents, even our "substantive due process" precedents, do not support *any* right to informational privacy. <u>Id</u>. First, we have held that a government act of defamation does not deprive a person "of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." <u>Paul v. Davis</u>, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). We reasoned that stigma, standing alone, does not "significantly alte[r]" a person's legal status so as to "justif[y] the invocation of procedural safeguards." <u>Id</u>., at 708-709, 96 S. Ct. 1155, 47 L. Ed. 2d 405. If outright defamation does not qualify, it is unimaginable that the mere disclosure of private information does. <u>NASA v. Nelson</u>, 562 U.S. at 162)(Scalia, J., Thomas, J. Concurring).

Therefore, being that Plaintiff is claiming a right for informational privacy, which is not constitutionally protected under the substantive due process clause of the Fourteenth Amendment, this claim should be DISMISSED WITH PREJUDICE.

## VI.  PRELIMINARY INJUNCTION

Rule 65 of the Federal Rules of Civil Procedure allows for the entry of a preliminary Order for a party to a lawsuit to perform or to abstain from performing a given act during the pendency of litigation.  <u>11A Wright, Miller & Kane, Federal Practice and Procedure</u>: Civil 2d, § 2941, at 33

(1995).  The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct.  United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952).

A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right.  Peoples Federal Savings Bank v. People's United Bank, 672 F.3d 1, 8–9 (1st Cir. 2012). The Court of Appeals for the First Circuit has fashioned a four-part inquiry for determining whether it is appropriate to order preliminary injunctive relief. Under this formulation, the court must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest. See Ross-Simons v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996) (citing Weaver v. Henderson, 984 F.2d 11, 12 & n.3 (1st Cir. 1993) and Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991)). The standard for issuing a permanent injunction is substantially the same as that applied to a request for preliminary injunctive relief, except that the plaintiff must prove actual success on the merits rather than the likelihood of success on the merits. See K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914-15 (1st Cir. 1999). Though each factor is important, the *sine qua non* element of the four-part inquiry is the likelihood of success on the merits.  If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.  New Comm. Wireless Servs., Inc., 287 F.3d at 9.

To demonstrate likelihood of success on the merits, a **plaintiff must show more than mere possibility of success rather, he must establish a strong likelihood that he will ultimately prevail**. Respect Maine PAC, 622 F.3d at 15 (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008)). Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012). (Emphasis provided).

As discussed throughout the instant motion to dismiss, Plaintiff failed to meet his burden of establishing the elements of the four-prong analysis, much less the *sine qua non* requirement of a strong likelihood of success on the merits.

The Vital Statistics Registry Act of Puerto Rico, 24 L.P.R.A. §1231, establishes the circumstances in which changes can be made to the birth certificate, mostly in cases where the certificate has not been registered. It also establishes the prohibition of amendments to all persons after the birth certificate has been registered, including making changes to the sex marker. Being that the prohibition of making changes to the birth certificate after it has been registered is to all persons equally, Plaintiffs cannot prevail in their Equal Protection violation claim.

Also, plaintiffs allege that they are forced to identify themselves with a "birth certificate with a sex that was incorrectly assigned to them at birth," and that they are forced to "disclose through their birth certificate private, sensitive, and personal information about their transgender status, gender identity, or medical condition" as a violation to their privacy rights under the First Amendment. Plaintiffs make similar claims as to their Fourteenth Amendment's privacy rights. As discussed above, the Supreme Court has not decided whether the Fourteenth Amendment

includes a right against public disclosure of private medical information, see Nat'l Aeronautics & Space Admin. V. Nelson, 131 S.Ct. 746, 756-57, 178 L. ED. 2d 667 (2011), and the question remains open in the First Circuit. Nunes v. UMass Corr. Health, 2013 U.S. Dist. LEXIS 143292, at *7 (D.Mass. Oct. 3, 2013)(citing Coughlin v. Town of Arlington, No. 10-10203-MLW, 2011 U.S. Dist. LEXIS 146285, at *42, 2011 WL 6370932, at *13 (D.Mass. Dec. 19, 2011)). The First Circuit in Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 144, (1st Cir. 2014), relied on Nasa v. Nelson, and did not decide whether plaintiffs had a constitutional right to keep medical information private. Therefore, Plaintiffs have failed to establish the *sine qua non* element of the four-part inquiry is the likelihood of success on the merits, and the instant complaint must be DISMISSED WITH PREJUDICE.

## VII. CONCLUSION

WHEREFORE, Defendant respectfully requests from this Honorable Court the **DISMISSAL WITH PREJUDICE** of the instant Complaint, in its entirety, for failure to state a claim upon which relief can be granted.

For the foregoing authority, arguments and reasons, the Defendants respectfully pray that this Honorable Court DISMISSES WITH PREJUDICE the Amended Complaint, and grant any other and further relief as the Court deems just and proper.

WHEREFORE, Defendant respectfully requests from this Honorable Court the **DISMISSAL WITH PREJUDICE** of the instant Amended Complaint, in its entirety, for failure to state a claim upon which relief can be granted.

I HEREBY CERTIFY that on this same date, I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all attorneys of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 12th day of June, 2017.


WANDA VÁZQUEZ GARCED
Secretary of Justice

WANDYMAR BURGOS VARGAS
Deputy Secretary
In Charge of Litigation

SUSANA PEÑAGARICANO BROWN
Director
Federal Litigation Division
Department of Justice
spenagaricano@justicia.pr.gov

*S/Idza Díaz Rivera*
IDZA DÍAZ RIVERA
U.S.D.C. No.: 223404
Attorney for Defendants
Department of Justice
Federal Litigation and Bankruptcy Division
P.O. Box 9020192
San Juan, P.R., 00902-0192
Tel. (787) 721-2900, ext. 2647
Fax (787) 723-9188
idiaz@justicia.pr.gov